UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STAG INDUSTRIAL HOLDINGS, LLC,<br><br>Plaintiff<br><br>v.<br><br>SOLAR SEAL LLC, SOLAR SEAL LLC, NAVERRA GLASSS LLC, and O3 INDUSTRIES LLC,<br><br>Defendants | Civil Action No. 1:23-CV-11726-JGD |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY AND CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant Solar Seal LLC ("Solar Seal"), Naverra Glass LLC ("Naverra Glass"), and O3 Industries LLC ("O3 Industries") oppose Plaintiff STAG Industrial Holdings LLC'S ("STAG") motion to compel discovery and cross-move for judgment on the pleadings in part. Discovery should not be compelled, and litigation of STAG's second and third claims should end because they are based on allegations exposed by discovery to date as patently false, as STAG knew or well should have known. STAG's motion scours for wholly new bases on which to conjure a lawsuit. This Court is comfortably within its discretion not to grant indulgence.

The captioned action originally involved one plaintiff (STAG, a commercial lessor) suing one defendant (Solar Seal, a lessee of factory space) for one count of nonpayment on a lease. STAG amended its complaint as of right to add a count against each of Naverra Glass and O3 Industries. STAG's Amended Complaint alleged: (1) that O3 Industries owned the machines used in Solar Seal's glass-manufacturing business; and (2) that when Solar Seal ceased operations in Massachusetts, O3 Industries shipped all the manufacturing equipment to

Connecticut and continued the business there under the name Naverra Glass. STAG's second count alleged Naverra Glass's liability as Solar Seal's successor; its third sought to pierce O3 Industries' corporate veil for having puppet-mastered the inter-state migration of Solar Seal. Omitted from STAG's motion to compel is any acknowledgement that discovery to date has undone STAG's allegations.

Specifically, STAG knows that Solar Seal sold its factory full of specialized manufacturing equipment at <u>public auction</u>, rather than O3 Industries having transferred the equipment "for nominal or no consideration to Solar Seal." STAG now knows that Solar Seal owned the auctioned equipment in the first place and did not use machines of O3 Industries. And STAG's own discovery compliance reveals at best the most tenuous basis for alleging the amended story without which litigation over a dead business (Solar Seal) would not be in this Court.[1]

STAG moves to compel discovery of now irrelevant matters in the hope of wrangling Danegeld from Naverra Glass or O3 Industries. But it does not matter who the shareholders of companies are if the alleged transfer between them undisputedly did not happen. Likewise, there is no point in letting STAG, in pursuit of new reasons to maintain claims against Naverra Glass and O3 Industries, roam through Defendants' bank accounts and financial statements. And having pleaded no count of fraudulent transfer against anyone, STAG's open fishing expedition for fraudulent transferees – as speculated recipients of shareholder distributions – cannot go on.

---

[1] STAG also now knows from third-party discovery of the Norwich, Connecticut, landlord that Solar Seal, by moving its business to Connecticut, would have been required to make approximately two million dollars more in lease payments than it would have to pay in STAG's space. See infra p. 17. Poor reason to deprive STAG its rent.

Because it is now clear that STAG's central allegations cannot survive, this Court should order dismissal on the pleadings pursuant to Fed. R. Civ. P. 12(c). If this Court does not dismiss, it has ample discretion to deny STAG's motion to compel or strictly to limit discovery. If discovery proceeds, it should first address only the untrue allegations without which STAG's case must fail.

## FACTS

**1.     Facts Concerning Status of Discovery.** Defendants do not contest STAG's factual recitation regarding the dates and contents of STAG's discovery requests. Defendants responded to seventeen requests that they possessed no responsive documents. They objected and refused to produce documents in response to fourteen of STAG's requests, as to two of which (Doc. Req. No. 24 and 36) they possessed no documents anyway. Defendants also declined to recirculate documents that STAG produced or which by their nature STAG must possess. What STAG describes as Defendants' "total of 8 documents" produced was fifty-six pages of production in ten (not eight) .pdf scans responsive to STAG's requests.

STAG's description of Defendants' stingy-sounding production omits that Defendants provided, in addition to what STAG requested, electronic links showing that over 100 pieces of Solar Seal's large machinery – alleged as having been shipped to Naverra Glass in Connecticut – were sold at public auction in Massachusetts. Defendants have reduced the contents of those websites to printable form and produce them as Bates-numbered documents SSDE000057-000099, attached hereto at Tab A. The information contains photographs of approximately 107 pieces of "specialized [manufacturing] equipment" sold to buyers at auction, and not "transferred…from the South Easton premises" to Naverra Glass. One page stated the date and place of auction and that the goods to be auctioned were:

3

>…an array of Solar Seal's architectural glass product manufacturing equipment following the closure of its South Easton, Mass., facility.
>
>"The Solar Seal auction will provide buyers a unique opportunity to purchase late model architectural glass products manufacturing equipment at a reduced cost with no delays," says Andrew Duncan, vice president of global auctions at Surplus Solutions. "All of the assets are available immediately with no supply chain issues or any delays. The 88,000-square-foot facility is also available for lease. <u>For any buyer interested in both the equipment and taking over the lease, it is a unique turnkey opportunity and can be up in running in only a few weeks</u>."
>
>Featured items at the auction will include glass tempering furnaces, high precision milling and drilling machines, insulated glass production lines, glass washers, cutting tables, straight line edges, glass storage racks, glass transport trucks and more.

<u>See</u> SSDE000097-99 included in <u>Tab A</u> (underline added).

Accordingly Defendants responded as possessing no responsive documents to STAG's Doc. Req. No. 24, which sought:

>All documents concerning the sale or transfer of any equipment, inventory, or other goods, assets or property from Solar Seal to any of the other Defendants and/or Jeremy Ozen, Daniel Ozen, and Michael Ozen.

<u>See</u> Defendants' Responses to Plaintiff's First Requests for Production of Documents, attached hereto at <u>Tab B</u>, at Resp, No. 24. STAG's request had sought to substantiate STAG's repeated information-and-belief allegation that Solar Seal had "transferred its assets including specialized equipment and inventory from the South Easton premises" to Naverra Glass in Connecticut. <u>See e.g.</u>, Am. Compl. at Introduction and ¶¶ 51, 63, and 83. Defendants' answer to STAG's Interrogatory No. 5 explained the non-existence of documents, stating that no equipment or other assets were transferred from Solar Seal's Premises [in South Easton, Massachusetts] to the Naverra Glass's in Norwich, Connecticut. <u>See</u> Defendants Answers to Plaintiff's First Set of Interrogatories, attached hereto at <u>Tab C</u>, at Int. Ans. No. 5.

Meanwhile Defendants sought discovery from STAG to fathom its factual basis for alleging the transfer to Connecticut of the auctioned equipment. Specifically Defendants'

Interrogatory No. 6 sought the basis of STAG's allegations that "Solar Seal removed property from the premises…and transferred such property to Naverra Glass" and that "O3 Industries directed the transfer for nominal to no consideration paid to Solar Seal."  STAG answered that Soar Seal had "requested additional time from the Plaintiff to remove specialized glass manufacturing equipment" and stated its "expect[ation] that discovery in this action will further establish that Solar Seal, at O3 Industries' direction, removed assets and property purchased by O3 Industries…and transferred those assets and property to Naverra Glass" for no consideration. See Plaintiff's Answers to Solar Seal's First Set of Interrogatories, attached hereto at Tab D, at Int. Ans. No. 6.

Other discovery of STAG's sought to substantiate its allegation, at paragraph 44 of the Amended Complaint, that O3 Industries – not Solar Seal – bought and owned the subject manufacturing equipment.  See STAG Doc. Req. No. 18.  Defendants produced the asset purchase agreement showing Solar Seal, not O3 Industries, had purchased its own equipment. See SSDE 00042-00056, attached hereto at Tab E.

**2. Facts Concerning Remaining Allegations in Support of Counts 2 and 3.**

Allegations regarding Counts 2 and 3 are as follows.[2]  O3 Industries was founded in 2017 and its members are Jeremy Ozen and Daniel Ozen.  Id. at ¶ 41.  The Amended Complaint alleges on information and belief that Solar Seal is a "subsidiary" of O3 Industries and that therefore O3 Industries "holds and controls" it.  Id. at ¶¶ 40 and 46.  It alleges that Jeremy Ozen is chief executive officer of O3 Industries and Manager of Naverra Glass.  See Am. Compl. at

---

[2] Most of STAG's allegations concern Solar Seal's acquisition of a predecessor entity and its assumption of that entity's lease with STAG, and therefore concern only Count 1, with which Defendants are not here concerned.  See, e.g., Am. Compl. at ¶¶ 9-17, 21-32, 36-38, 48-49, 54-58 and 66-74.  These relate to Counts 2 and 3 only as alleging the liability to be imposed on an alleged corporate successor.

5

¶ 43. It alleges no ownership or executive or management capacity of Jeremy Ozen's in Solar Seal.[3] In response to STAG's initial notice of Solar Seal's lease default, Jeremy Ozen allegedly responded "on behalf of Solar Seal[,]" id. at ¶¶ 32-33, because, in addition to sending Solar Seal notice, STAG added, as a co-addressee, O3 Industries address in New York, New York.[4] See Notice of Default, Am. Compl. Exhibit F.

STAG did not attach to the Amended Complaint Jeremy Ozen's alleged e-mail response to the default notice. That document, STAGINDUSTRIAL 00000012, is attached hereto at Tab F. It does not call itself (as STAG alleges) a response "on behalf of Solar Seal." See Am. Compl. at ¶ 33. STAG had mailed notice to O3 Industries in Manhattan, and Jeremy Ozen replied from the e-mail address jozen@o3indus.com. STAG sent a second notice of default in a similar way after which nothing happened. Id. at ¶¶ 37-38.

## ARGUMENT

**1.     The Governing Law.**

*A.     Discovery Under Rule 26*. STAG argues that because it has asserted certain claims it is entitled to all information potentially regarding those claims. See STAG Memo. of Law at p. 4. Rule 26 of the Federal Rules of Civil Procedure is not so pat. "Discovery is not a 'fishing expedition,' and parties must disclose some relevant factual basis for their claim before requested

---

[3] STAG alleges that Daniel Ozen is the manager and registered agent of Solar Seal. Id. at ¶ 42. It relies for that allegation on a public filing with the Massachusetts Secretary of the Commonwealth. Defendants have explained in their removal papers that the entity STAG alleges as "Solar Seal MA," see Am. Compl. at ¶ 2, does not exist and that the Secretary of the Commonwealth filing was in error. The only Solar Seal entity is the Delaware limited liability company that the Amended Complaint calls "Solar Seal DE." Am. Compl. at ¶ 3. It did business in Massachusetts.

[4] STAG attaches all relevant lease documents as exhibits to the Amended Complaint. None provides for service on Solar Seal by delivery to O3 Industries.

discovery will be allowed." See Laaman v. Powell, No. Civ. 75–258–SD, 1994 WL 262779 at *2 (D.N.H. Jan. 10, 1994) quoting Hoffman v. Reali, 973 F.2d 980, 987 (1st Cir.1992) and Milazzo v. Century Ins., 856 F.2d 321, 322 (1st Cir.1988).

Discoverability "depends on a balancing of the requesting party's need to obtain all relevant evidence with the responding party's need for protection from far-reaching, burdensome, and invasive discovery." See Rivera v. NIBCO, 364 F.3d 1057, 1072 (9th Cir. 2004); Delgado v. Tarabochia, No. 2:17-cv-01822-RSL, 2018 WL 2088207, at *2 (W.D. Wash. May 4, 2018). Although courts should not adopt a narrow view of relevance, neither should they "condone fishing expeditions." Id. (Underline added.)

The United States Supreme Court has explained that "the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery where 'justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .' Rule 26(c). With this authority at hand, judges should not hesitate to exercise appropriate control over the discovery process. Herbert v. Lando, 441 U.S. 153, 177 (1979) (underline added). A court possesses discretion to refuse to compel a request for production "…when the request far exceeds the bounds of fair discovery…." Krewson v. City of Quincy et al., 120 F.R.D. 6, 7, (D. Mass. 1988) (ellipses in original).

These principles reduce to a working maxim that the discoverability of a given record "depends on the facts of each case." Elster v. Alexander 74 F.R.D. 503, 507 (N. D. Ga. 1976); see also Seawolf Tankers Inc. v. Laurel Shipping LLC, 345 F.R.D. 55, 58 (S.D. N. Y. 2023) ("the determination whether…information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.") (quoting Fed. R. Civ.

7

P. 26(b)(1) Advisory Committee Notes to 2000 Amendments). Finally, "Control of discovery is entrusted to the sound discretion of the trial courts." Adans v. Gissel, et al., 2022 WL 14772785 at *2, Civil No. 20-11366-PBS (October 26, 2022 D. Mass.).

      B.    *Motions for Judgment on the Pleadings Pursuant to Fed. R. Civ P. Rule 12(c).*

The motion "may be made at any time after the pleadings are closed, subject to the rule's express proviso that a hearing of the motion will not result in a delay of the trial." See 5C Wright & Miller, Fed. Prac. & Proc. § 1376, *Judgment on the Pleadings – In General*. "The Rule 12(c) motion may be employed by the defendant as a vehicle for raising several of the defenses enumerated in Rule 12(b) after the close of the pleadings[,]" and Fed. R. Civ. P. 12(h)(2) "provides that the defenses of failure to state a claim upon which relief can be granted [and specified others] may be raised on a motion for judgment on the pleadings or at the trial on the merits." Id. "In this context, Rule 12(c) is merely serving as an auxiliary or supplementary procedural device to determine the sufficiency of the case before proceeding any further and investing additional resources in it. Id. (Underlines added.)

Rule 12(c) analysis "focus[es] on the content of the competing pleadings, exhibits thereto, matters incorporated by reference in the pleadings, whatever is central or integral to the claim for relief or defense, and any facts of which the district court will take judicial notice." Id. (Underline added.) In that vein, "the motion may be helpful in disposing of cases in which there is no substantive dispute that warrants the litigants and the court proceeding further, thereby easing crowded trial dockets in the federal district courts. Id. § 1377, *Practice Under Rule 12(c)*. Although allegations on the face of a complaint are taken as well-pleaded in Rule 12(c) practice, id., that indulgence does not extend to allegations that, on the Rule 12(c) motion record, could not survive summary judgment-type scrutiny. Rule 12(c) and Rule 56 motions are similar in that

"[b]oth the summary judgment procedure and the motion for judgment on the pleadings are concerned with the substance of the parties' claims and defenses and are directed towards a final judgment on the merits. Indeed, the standard applied by the court appears to be identical under both motions." Id. § 1369, *Judgment on the Pleadings—Compared With Other Motions*. Accordingly, mere reasonable inferences from the facts alleged will not preserve a triable issue where materials "central or integral to the claim for relief or defense[.]" Id. at § 1376.

    C. *De Facto Merger and Veil Piercing*.

Milliken v. Duro Textiles LLC, 451 Mass. 547 (2008) is the lead Massachusetts appellate decision on successor liability resulting from de facto merger and mere continuation. The de facto merger theory of successor liability "has usually been applied to situations in which the ownership, assets and management of one corporation are combined with those of another, preexisting entity." Id. at p. 557. Mere continuation "envisions a reorganization transforming a single company from one corporate entity into another." Id. at p. 557.

The standard for piercing the corporate veil in Massachusetts "is a demanding one." Medici v. Lifespan Corp., 239 F.Supp.3d 355, 371 (D. Mass. 2017) quoting Lothrop v. North American Air Charter, Inc., 95 F.Supp.3d 90, 100 (2015). "Corporations are presumed to be 'separate and distinct entities' notwithstanding relationships between them." Id. "The corporate veil 'may be pierced only with reluctance and in extreme circumstances when compelled by reasons of equity.'" Id. The corporate form may be disregarded only when either: (1) "'there is active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control, in the activities of another and there is some fraudulent or injurious consequence of the inter-corporate relationship' [or] 'when there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with

substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting.'" Id. (emphasis in original) quoting My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614 (Mass. 1968).

"A strong relationship is not enough to compel the disregard of separate entities." Medici v. Lifespan Corp., 239 F.Supp.3d 355, 371 (D. Mass. 2017). Likewise "control, even pervasive control, without more, is not a sufficient basis for a court to ignore corporate formalities." OMV Assocs., L.P. v. Clearway Acquisition, Inc., 82 Mass. App. Ct. 561, 566 (2012). Finally, as rare as veil piercing is, it is particularly eschewed in contract cases. Massachusetts appellate law is clear that "a contract-based relationship, where the parties are plainly identified and their rights and obligations clearly defined, is less likely to present the sort of rare situation that calls for corporate disregard in order to prevent gross inequity. For that reason, '[s]everal courts and commentators have suggested that it should be more difficult to pierce the [corporate] veil in a contract case than in a tort case.' Our cases reflect that view." Id. at 566 quoting Birbara v. Locke, 99 F.3d 1233, 1238 (1st Cir. 1996).

2. **STAG's Motion to Compel Should be Denied, and Judgment on the Pleadings Should Enter, Because: (1) the Indispensable Allegations of the Amended Complaint Are False; and (2) the Remainer of the Motion Record Cannot Support Counts 2 and 3 as a Matter of Law.**

The repeatedly-alleged fundament of the Amended Complaint's second and third counts is that Solar Seal picked up everything but the walls and roof of its Massachusetts factory, carried it to Connecticut, and continued its business there as Naverra Glass. STAG made these allegations knowing that it would not plausibly state a claim without them. It will not pierce a corporate veil to allege that "members of the Ozen family" are related by blood, that Jeremy Ozen e-mailed STAG from an O3 Industries e-mail address after STAG federal-expressed him a

10

letter at O3 Industries' office in Manhattan, and that two of the Defendants make things out of glass. Skyscrapers are made of glass; so are snow globes containing toy skyscrapers. That is no reason to conclude that the maker of one makes the other also.

The motion record makes crystal clear that the story alleged by the Amended Complaint did not happen. After the factory auction on STAG's premises, STAG swept up the floor and carted out of the building what was left and added the charge for doing to Solar Seal's lease debt. See Am. Compl. at ¶¶ 55-56; see also STAG Ans. Int. No. 7 (explaining STAG's lease charges for moving carts, large machines, 55 gallon steel containers, glass panels, furniture, litter, and debris). It is positively odd for STAG to have filed an amended complaint brainwashed of what it must know to have occurred at its own property.

STAG's without-which-nothing allegations now shown as false, the question is what procedurally to do. The choices are: (a) to end the case because the pleadings stripped of their falsity require it; (b) to let discovery proceed freely; or (c) to allow such discovery as will eliminate remaining questions (if any) about the false story. The following sections consider the options in turn.

> A. *Discovery Should Not Proceed Freely and, if it Were to, STAG's Motion Should Still be Denied*.

It is comfortably within this Court's discretion on the facts of this record to limit or restrict STAG's discovery. As liberal as discovery generally may be, Courts should not "condone fishing expeditions." Rivera v. NIBCO, 364 F.3d 1057, 1072 (9th Cir. 2004). They must not neglect their power to restrict discovery where justice requires, and should not hesitate to exercise appropriate control over the discovery process. Herbert v. Lando, 441 U.S. 153, 177 (1979). They possesses discretion not to compel "when the request far exceeds the bounds of fair discovery[.]" Krewson v. City of Quincy et al., 120 F.R.D. 6, 7 (D. Mass. 1988).

11

Under these principles, Defendants urge denial of STAG's motion as "beyond the bounds of fair discovery," because STAG is foraging for facts to replace the ones that it pleaded as true while knowing (at least objectively) that they were false.  Krewson, 120 F.R.D. at 7.  Discovery does not exist for that.

STAG maintains in its motion, as it has in pre-motion conferencing, that Defendants, not having moved to dismiss pursuant to Rule 12(b)(6), would seek an impermissible do-over by stopping discovery now and seeking judgment on the pleadings.  See STAG Memo. of Law at p. 10.  Not so.  STAG amended its complaint knowing that its allegation of the migrated factory would be taken as true for 12(b)(6) purposes and that only preliminary discovery could chase that story out of the case.  If, with the story disposed of, it is too late for Defendants to stop STAG's fishing expedition for a new story and to attack the merits of matters raised by the pleadings, then STAG stripped the 12(b)(6) phase out of this action by means of objectively false allegations.  That cannot be rewarded.

Defendants now turn to the thirteen document requests and five interrogatories on which STAG moves to compel.  Document Requests No. 13-16 are for the limited liability company agreements of the three Defendants plus Solar Seal Architectural LLC, the alleged predecessor of Naverra Glass.  The identical purpose of the requests is to search out common ownership.  See STAG Memo of Law at p. 8.  But overlap in ownership of the entities is academic if the first entity did not move its factory to the second under the alleged control of the third.  Even an allegation of the third's control does not matter when the control was over a factory migration that did not happen.  (This is why, as argued below, see infra pp. 17-18, the only discovery STAG might be first be allowed is discovery designed to settle the truth or falsity of its own story.)

Similar but more expansive is Document Request No. 17, which seeks documents sufficient to show any relationships among the companies including documents regarding owners, management and any organizational charts. This request is dogged by the problem of the previous four: the relationships do not matter if the possibly related entities did not lift and move a capital-intensive manufacturing business beyond the reach of the Plaintiff creditor. Notably, the contemporaneous evidence makes plain that from the outset, the sellers of Solar Seal were trying not to <u>steal</u> the business but to <u>get rid of it altogether</u>: the auction was not merely of machines and inventory but appealed, "For any buyer interested in both the equipment <u>and taking over the lease</u>, it is a unique <u>turnkey opportunity</u> and can be up in running in only a few weeks." <u>See</u> SSDE000097-99 at <u>Tab A</u>. Far from plotting to rob STAG, the sellers hoped to bless it with a new tenant.

Interrogatories No. 2, 6, and 7 variously articulate a request for written answers containing the same information as Document Requests No. 13-17. <u>See</u> STAG Memo. of Law at p. 8. Answers should likewise not be compelled.

Document Request No. 23 and Interrogatory No. 4 focus specifically on corporate entities owned, managed, or controlled by O3 Industries. <u>Id.</u> at p. 9. Same defect: the question is rendered irrelevant when no transfer of one of the allegedly owned or controlled businesses actually happened. The request and interrogatory are also far broader than what the Amended Complaint purports to put at issue – <u>everything</u> potentially related to O3 Industries is not a subject of the captioned action.

Document Requests No. 30-32 and Interrogatory No. 12 request identification of the Defendants' bank accounts and production of bank statements. The same Achilles' heel and then

some plagues these requests: nothing in the Amended Complaint alleges a "transfer of cash assets among" Defendants. The discovery facially exceeds the issued raised by the pleading.[5]

Document Requests No. 33-35 seek Defendants' financial statements for the same reasons STAG seeks bank statements, see STAG Memo. of Law at p. 9, and should be denied for the same reasons as Document Requests No. 30-32.

Interrogatory No. 9 is a fox hunt for fraudulent transferees. To release the hounds would be particularly bad. First, STAG has no fraudulent transfer claim. Second, its amended pleading says nothing about "the siphoning away of any cash to avoid creditors of Solar Seal." STAG Memo. of Law at p. 9. And any such imagined creditors would be ones other than STAG, because STAG claims to have been deprived by one and only one transfer: the physical lifting and carrying away of "specialized manufacturing equipment and inventory" allegedly put to use in Connecticut. Am. Compl. at p. 1.

STAG asserts the "vitality" of its discovery requests. See STAG Memo. of Law at p. 9. The requests are not vital, however, as discovery is supposed to be, for supplying details concerning something that happened; they are vital financially because STAG faces a large write-off of a debt that it cannot collect from Solar Seal. It is legitimately vital for Defendants (especially Naverra Glass and O3 Industries) not to be stuck in a lawsuit having no genuine basis but merely in search of one.

---

[5] STAG does not get discovery on where Solar Seal's auction proceeds went, because STAG alleged, on information and belief, that the machines were not auctioned. One might be informed and believe that the person yonder is either Liam Neeson or Cameron Diaz, but cannot believe both. Figuratively, STAG's Amended Complaint went with Liam Neeson. That having failed, STAG cannot opt for Ms. Diaz, because a litigant cannot maintain on information and belief what it is not informed and does not believe. If this Court allows STAG to rake through Defendants' bank statements, STAG will have boot-strapped its way into a lawsuit in search of itself by alleging objectively false facts.

B. *Judgement Should Enter on the Pleadings Dismissing Counts 2 and 3*.

STAG's remaining viable allegations in light of discovery to date are:

- That Jeremy and Daniel Ozen are chief executive officer and president of O3 Industries.

- The remark of a turnaround consultant prior to acquisition of Solar Seal's predecessor that "Jeremy and Daniel are looking to purchase the Solar Seal business as a going concern…."

- Jeremy Ozen's subsequent explanation to STAG that "O3 is a private equity fund…[and] unable to disclose our capital partners" and that "Solar Seal will be a stand alone entity running the current [i.e, the predecessor's current] operations."

- Solar Seal's subsequent acquisition - not O3 Industries as the Amended Complaint alleged - of Solar Seal's predecessor.

- That within months Solar Seal's failure, a communication from one Jeff Heintz, from a Naverra Glass e-mail address, stated on behalf of Solar Seal that as of July 11, 2022, "It is not our intent to move out of the building [Solar Seal's facility at Bristol Avenue in South Easton, Mass.]. We are going to continue with our current lease."

- That STAG mailed to Jeremy Ozen, at his Manhattan O3 Industries address, notices it principally addressed to Solar Seal in South Easton, Massachusetts, and exchanged e-mails with Jeremy Ozen at his O3 Industries e-mail address.

STAG does not allege financial intermingling or misallocation of auction proceeds. It was tested for the basis of its information and belief that "Solar Seal removed property and assets from the Premises that O3 Industries had purchased from [Solar Seal's predecessor]," and "transferred such property to Naverra Glass as part of Naverra Glass's manufacturing activities in Connecticut…for nominal to no consideration paid to Solar Seal." See STAG Int. Ans. No. 6. STAG answered that both Solar Seal and Naverra Glass made things out of glass and "expects discovery in this action to further [sic] establish that Solar Seal, at O3 Industries direction removed the assets and property" from the Massachusetts factory and "transferred [them] to Naverra Glass…." Id. That is essentially an admission of having no basis on which to allege the

15

transfer.  Moreover STAG's answer to Interrogatory No. 6 states that Solar Seal "requested additional time…to remove…specialized glass manufacturing equipment and raw materials from the facility…"  If STAG wishes to double down on this implication of this sworn statement that Defendants, as opposed to auction buyers, removed the equipment, it should do so in its opposition.

STAG dubiously cites to three pages of e-mail in its discovery, STAGINDUSTRIAL 00000259-61, to describe the wind-down and removal of machines from Solar Seal's factory as evidence of de facto merger, but omits the next page of e-mail, stating as of that writing (three months before the auction) that "It is not our [Solar Seal's] intent to move out of the building [in South Easton, Mass.].  We are going to continue with our current lease."  See STAGINDUSTRIAL 00000262.  That e-mail chain is thus not evidence of de facto merger but, if anything, of its opposite.  In this answer, as with its Answer to Interrogatory No. 6, STAG "expects discovery in this action to further establish" the occurrence of the equipment transfer that did not happen.

STAG repeatedly supports its information and belief with an expectation that discovery will reveal what STAG is unable to offer as a basis for its own information and belief.  See Int. Ans. Nos. 12, 13, 14, and 15.  Apart from this hope, it says little.  As basis for alleging that "O3 Industries exercises pervasive control over Solar Seal" STAG avers that Jeremy and Daniel Ozen are executives of O3 Industries and that Jeremy Ozen, to whom STAG sent default notices at O3 Industries in New York, corresponded by e-mail to STAG.  See Int. Ans. No. 12.  That is facially not reason to allege "pervasive control over Solar Seal," much less control over an event that did not occur.  It does not merit trial.

STAG identically incorporate this facially deficient sworn answer in response to Defendants' Interrogatory No. 14, which sought STAG's basis for alleging that "O3 Industries caused Solar Seal to continue [Solar Seal's] business of the design and manufacture of glass products" at Naverra Glass, and Interrogatory No. 15, that O3 Industries controlled Naverra Glass's manufacturing activity. See Int. Ans. No. 14 & 15. And contrary to STAG's assertion that Naverra Glass has the same "regional clients as Solar Seal," Defendants have produced both documents and sworn answers that the two entities had not one client in common because they served different industries. See STAG Int. Ans. No. 10. Discovery will not "further establish" that the two businesses serve the same customers.

Specific to successor liability and veil-piercing, STAG simply does not allege mere continuation, because it alleges that Naverra Glass already existed. Thus STAG asserts only a de facto merger. But if Solar Seal did not transfer its factory to Naverra Glass, Solar Seal did not combine with another preexisting entity. See Milliken v. Duro Textiles LLC, 451 Mass. 547, 556 (2008) (regarding de facto merger). Veil-piercing is exceptionally hard to prove and on this motion record impossible. Corporate disregard is all but inapplicable in contract cases. "[A] contract-based relationship, where the parties are plainly identified and their rights and obligations clearly defined, is less likely to present the sort of rare situation that calls for corporate disregard in order to prevent gross inequity." OMV Assocs., L.P. v. Clearway Acquisition, Inc., 82 Mass. App. Ct. 561, 566 (2012).

Finally, a comparison of Solar Seal's lease and Naverra Glass's lease in Connecticut, which STAG references in its Amended Complaint and obtained in third-party discovery, reveals that Solar Seal's alleged continuation in Connecticut would have added approximately $2,000,000 to its lease obligations. Compare Am. Compl. at Ex. B with Connecticut Lease,

17

attached hereto at Tab G.  In this respect too, the pleadings themselves and the documents referenced therein undermine STAG's case.

### C. *If Discovery is Allowed it Should be Limited*.

If STAG has any good-faith belief to maintain its allegation of an interstate factory transfer, this Court might reasonably allow discovery of that much.  But for reasons already explained, this Court should not allow discovery seeking to identify the owners of businesses between two of whom there was no factory transfer, or for common customers that do not exist, or of bank accounts and financial statements of companies not alleged to be financially intermingled, or regarding the proceeds of an auction that STAG willfully refuses to acknowledge, or to search out fraudulent transfers for non-existent fraudulent transfer claims.

**WHEREFORE**, Defendants respectfully request that Plaintiff's Motion to Compel be **DENIED** and that Defendants' Motion for Judgment on the Pleadings as to Counts 2 and 3 of the Amended Complaint be **ALLOWED.**

Respectfully submitted,

SOLAR SEAL LLC, SOLAR SEAL LLC, NAVERRA GLASSS LLC, and O3 INDUSTRIES LLC,

By their attorney,

*/s/ Daniel J. Dwyer*
Daniel J. Dwyer (BBO No. 567026)
Alexander Read (BBO No. 711560)
Verrill Dana LLP
One Federal Street, 20th Floor
Boston, MA 02110
ddwyer@verrill-law.com
(617) 309-2600

Date: April 19, 2024

## CERTIFICATE PURSUANT TO LOCAL RULE 7.1(A)(2)

I, Daniel J. Dwyer, counsel for Defendants, certify that I conferred with Derek Domian and John White, counsel for STAG Industrial Holdings, LLC, in an effort to narrow the issues related to Defendants' cross motion for judgment on the pleadings on April 12, 2024.

*/s/ Daniel J. Dwyer*

## CERTIFICATE OF SERVICE

I, Daniel J. Dwyer, hereby certify that this document filed through the ECF system will be served by first-class mail, postage prepaid, and by electronic mail, on April 19, 2024, to Derek B. Domian, Esq., and John F. White III, Esq., Goulston & Storrs PC, 400 Atlantic Avenue, Boston, MA 02110.

*/s/ Daniel J. Dwyer*
Daniel J. Dwyer

26281486_1