UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STAG INDUSTRIAL HOLDINGS, LLC,<br><br>Plaintiff<br><br>v.<br><br>SOLAR SEAL LLC, SOLAR SEAL LLC, NAVERRA GLASSS LLC, and O3 INDUSTRIES LLC,<br><br>Defendants | Civil Action No. 1:23-CV-11726-JGD |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS**

Pursuant to Federal Rule of Civil Procedure 56(c), Defendants Solar Seal LLC ("Solar Seal DE"), Solar Seal LLC ("Solar Seal MA") Naverra Glass LLC ("Naverra Glass"), and O3 Industries LLC ("O3 Industries"), together ("Defendants"), by and through their undersigned counsel, hereby submit this Statement of Material Facts in support of their Motion for Summary Judgment and Memorandum of Law, filed herewith.

**A. The Parties and Other Entities.**

1.  Plaintiff STAG Industrial Holdings, LLC ("STAG"), is a limited liability company organized under the laws of Delaware. Am. Compl. ¶ 1.

2.  Defendant Solar Seal, LLC ("Solar Seal DE"), is a Delaware limited liability company. Am. Compl. ¶ 3. It was formed on March 11, 2021. See Secretary of the State of Delaware Entity Details, Exhibit 1 to the Affidavit of Daniel J. Dwyer, ("Dwyer Aff."); see also Rule 30(b)(6) Deposition of Jeremy Ozen ("Ozen Depo."), Exhibit 2 to Dwyer Aff., 61: 8-10.

1

3. Solar Seal DE's members are Michael Ozen and David Ozen. See Limited Liability Company Agreement of Solar Seal LLC, Exhibit 3 to Dwyer Aff. (Exhibit 11 to Ozen Depo.).

4. Jeremy Ozen is Solar Seal DE's manager. See Written Consent of the Manager of Solar Seal LLC dated April 6, 2021, Exhibit 4 to Dwyer Aff. (included in Exhibit 10 to Ozen Depo.); see also Ozen Depo. at 62: 3-7.

5. Defendant Solar Seal, LLC, ("Solar Seal MA") was formed in Massachusetts on May 20, 2021. See Massachusetts Secretary of the Commonwealth Certificate of Organization, Exhibit 5 to Dwyer Aff. (Exhibit 8 to Ozen Depo.).

6. Daniel Ozen is listed with the Massachusetts Secretary of the Commonwealth as Solar Seal MA's manager of record. Exhibit 5 to Dwyer Aff. Solar Seal MA, however, did not have any members, operating agreement, employees, or functions. Ozen Depo. 65: 11-15 ("[T]here wasn't anything to manage."); 165: 9-11 ("It's not an operating business.").

7. Defendant Naverra Glass, LLC ("Naverra Glass"), a Connecticut limited liability company, was originally formed as Solar Seal Architectural, LLC ("Solar Seal Architectural CT"), on August 25, 2022. See Secretary of the State of Connecticut Certificate of Organization, Exhibit 6 to Dwyer Aff. (Exhibit 32 to Ozen Depo.). Naverra Glass's manager of record was Jeremy Ozen. Id.

8. The name of Solar Seal Architectural CT was changed to Naverra Glass LLC on January 31, 2023. See Secretary of the State of Connecticut Certificate of Amendment, Exhibit 7 to Dwyer Aff. (Exhibit 33 to Ozen Depo.)

9. Naverra Glass had no operating agreement, officers, members, financial or human resources department, paid no salaries, compensation, or distributions, filed no tax returns and

2

had no customers. Ozen Depo. 153-55. It was not a functioning company. Id. at 144: 23-24 ("Solar Seal Architectural, a Connecticut entity, had no operations.").

10. Defendant O3 Industries, LLC ("O3 Industries") is a limited liability company organized under the laws of Delaware. Am. Compl. ¶ 5. It was formed on February 28, 2017. See Secretary of the State of Delaware Entity Details, Exhibit 8 to Dwyer Aff.; Ozen Depo. 23: 4-16.

11. Jeremy Ozen and Daniel Ozen are O3 Industries' members. See O3 Industries LLC Statement of LLC Members dated January 1, 2021, Exhibit 9 to Dwyer Aff. (Exhibit 10 to Ozen Depo.); see also Ozen Depo. 24: 8; 28: 10-12.

12. Jeremy Ozen is O3 Industries' chief executive officer, and Daniel Ozen is its president. Ozen Depo. 30: 2-8.

13. Shaw Glass Holdings, LLC ("Shaw Glass Holdings") was a Delaware limited liability company that did business in Massachusetts under the name Solar Seal. See Asset Purchase Agreement By and Between Solar Seal, LLC and Shaw Glass Holdings LLC (DBA Solar Seal) Dated April 1, 2021, Exhibit 10 to Dwyer Aff. (Exhibit 7 to Ozen Depo.).

14. On September 24, 2021 – that is, well before the formation of Solar Seal Architectural CT – a limited liability company called Solar Seal Architectural LLC was organized in Delaware ("Solar Seal Architectural DE"). See Secretary of the State of Delaware Entity Details, Exhibit 11 to Dwyer Aff. Its name was changed to Naverra LLC on October 21, 2022. Id.

**B. The Leases.**

15. On November 1, 2012, STAG's predecessor-in-interest, Shaw Glass Company, Incorporated ("Shaw Glass Company"), as landlord, entered into a commercial lease with Shaw

Glass Holdings, as tenant, for the premises located at 55 Bristol Drive, South Easton, Massachusetts (as later extended and amended, the "Massachusetts Lease").  Am. Compl. ¶¶ 9-10; Exhibit A to Am. Compl.

16. Shaw Glass Company changed its name to Sharoc Realty, Inc. and then assigned its rights and obligations under the Massachusetts Lease to STAG on December 27, 2017. Am. Compl. ¶¶ 13, 15.

17. On October 15, 2021, Solar Seal Architectural DE executed a lease for space to be used as a manufacturing facility at 40 Wisconsin Avenue, Norwich, CT (the "Connecticut Lease").  The Connecticut Lease, Exhibit 12 to the Dwyer Affidavit, is Exhibit 21 of Deposition of STAG's Rule 30(6)(6) designee Robert Hawkins ("Hawkins"), dated October 3, 2024 ("Hawkins Depo.").

**C. Solar Seal DE's Acquisition of Assets from Shaw Glass Holdings; Financing Thereof.**

18. Solar Seal DE acquired assets of Shaw Glass Holdings (d/b/a Solar Seal), pursuant to an Asset Purchase Agreement between those parties.  See supra ¶ 13.

19. O3 Industries loaned Solar Seal DE funds for Solar Seal DE's purchase of Shaw Glass Holdings' assets.  Ozen Depo. at 36.  This loan was memorialized by a Demand Line of Credit Promissory Note and Security Agreement by and between the two parties, Exhibit 13 to the Dwyer Affidavit (Exhibit 4 to Ozen Depo.).

20. Solar Seal DE repaid the funds borrowed from O3 Industries for the purchase of the Shaw Glass Holdings assets in July 2021.  Ozen Depo. 38.

**D. Assignment of Lease in Connection with Solar Seal DE's Asset Acquisition.**

21.     The approval of STAG, as landlord, was necessary for the Massachusetts Lease to be assigned from Shaw Glass Holdings to Solar Seal DE on April 1, 2021.  See Exhibit A to Am. Compl. (Massachusetts Lease) at 8.

22.     STAG's vice president of asset management, Robert Hawkins ("Hawkins"), was STAG's Rule 30(b)(6) designee in the captioned action.  See generally Hawkins Depo, Exhibit 14 to Dwyer Aff.

23.     Hawkins had responsibility for STAG's approval of the assignment of the Massachusetts Lease.  Hawkins Depo. 64: 3-8 ("Q. And you approved the assignment of the lease; correct? A. We did."); 47: 14-21.

24.     By e-mail dated March 12, 2021, Hawkins was introduced to Jeremy Ozen and Daniel Ozen by one Neil Minihane ("Minihane").  Hawkins Depo. 55.

25.     An e-mail chain beginning on March 12, 2021, and ending on March 15, 2021, including e-mails to or from, among others, Minihane, Hawkins, Jeremey Ozen, and Daniel Ozen is Exhibit 15 to the Dwyer Affidavit (Exhibit 5 to Hawkins Depo.).

26.     In two e-mails dated March 15, 2021, Jeremy Ozen informed Hawkins that Solar Seal DE "would be a stand alone entity running the current operations." Id.; see also Hawkins Depo. 61: 1-7.

27.     By e-mail also dated March 15, 2021, Jeremy Ozen provided Hawkins with an organization chart reflecting that Solar Seal DE had no corporate parent. Hawkins Depo. at 62: 11 – 63: 1; Exhibit 5 to Hawkins Depo.

28.     Hawkins asked Jeremy Ozen by e-mail, "Who runs your company?" Jeremy Ozen replied O3 Industries was a private equity company and had no lender and that he could

5

not disclose capital partners.  See Exhibit 16 to Dwyer Aff. (Exhibit 4 to Hawkins Depo.); see also Hawkins Depo. 64: 9-14.

29. From time to time, STAG deals with tenants who propose to assign their leases in connection with an assignee-tenant's acquisition of an assignor-tenant's assets or corporate stock. Hawkins Depo. 12-13.

30. According to Hawkins:

> In an assignment situation there's language with our form lease document that provides for landlord consent and landlord consent is usually predicated on our sole discretion regarding the ability of the new lessee to pay.  So we evaluate the new lessee through a credit review, discussions with the management team and then our experience determines whether we're comfortable with that new lessee as a tenant.

Hawkins Depo. 13: 2-10.

31. Also in "an assignment situation," STAG's credit team reviews the credit of the prospective assignee and looks at its financial statements. Id. at 13: 12-18.  The credit team reviews operating statements from the new lessee and has discussions with the new lessee regarding what their business pro forma looks like and what their plans are.  Id. at 13: 17-24.

32. Solar Seal DE, the prospective assignee of the Massachusetts Lease, was a newly formed limited liability company. Supra ¶ 2. As such, it had no financial statements or operating history prior to the assignment.

33. Regarding assignment situations in which the prospective assignee has no financial statements or operating history, Hawkins testified:

> So we'd still talk to the management team.  We'd still try to understand their capitalization and I think it's rare that we would see a group come in that has zero experience in the field that they're attempting to operate a business in so the expectation is at least someone on the management team has some level of experience in that field and that's consistent with what we've seen every time we've had that situation occur.

Hawkins Depo. 14: 16-24.

34. Regarding newly formed entities, or "newco's," as prospective assignees, Hawkins testified:

> If the existing tenant is profitable and is being acquired by say a larger company, then we might look at the existing financials of the tenant but we'd also -- the lease would probably be backstopped by a guarantee from the new company. In other situations where the company has defaulted, gone bankrupt, there's no point in looking at the financials of the existing company because they're insolvent. So in that situation we look at the ability of the new tenant to pay.

Hawkins Depo. 15.

35. STAG's credit team, like Hawkins, is located in STAG's Boston office. Id. at 17.

36. STAG's credit team decides whether to require a guarantee on behalf of the new tenant. Id.

37. In deciding whether to insist on a guaranty of a newco tenant's obligation, says Hawkins, "we'd probably look at the capitalization" and obtain information including "an understanding of their [the newco assignee's] operating environment, their bank relationships, their ability to fund operations and their plan". Id. at 16: 12-23.

38. STAG's credit team interviewed Solar Seal DE. Id. at 49.

39. After STAG's credit team did its assignment-related review, it did not recommend that the assignee's lease obligation be secured with a guaranty. Id. at 49.

40. In situations where Hawkins does not receive from STAG's credit team "any kind of recommendation that there be a security deposit or a guarantee," Hawkins, as a matter of regular process, "[m]ove[s] forward generally" with the assignment. Id. at 49.

41. Hawkins understood that because "they [the credit team] didn't raise any red flags, it was okay to go ahead with the assignment and assumption" agreement. Id. at 50. "And that's what happened here." Id. at 49.

42. By e-mail dated March 19, 2021, Jeremy Ozen sent Hawkins a proposed draft assignment of the Massachusetts Lease. That e-mail and draft assignment are Exhibit 17 to the Dwyer Aff. (Exhibit 6 to Hawkins Depo.). The draft assignment refers to the assignee as "[New Co] a [Delaware] limited liability company." Id.

43. By e-mail dated March 25, 2021, Jeremy Ozen asked Hawkins and STAG's Kurt Flionis ("Flionis") for a response regarding the draft assignment. That e-mail is Exhibit 18 to the Dwyer Aff. (Exhibit 7 to Hawkins Depo.).

44. By e-mail dated March 25, 2021, Hawkins replied that STAG's "legal team is reviewing." Id.

45. On or about March 29, 2021, STAG informed Jeremy Ozen that the form of assignment would have to be STAG's standard form of assignment. See E-mail chain beginning on March 19, 2021, and ending on March 30, 2021, including e-mails to or from Hawkins and Jeremey Ozen, Exhibit 19 to Dwyer Aff. (Exhibit 9 to Hawkins Depo.).

46. By e-mail dated March 31, 2021, Hawkins sent Jeremy Ozen an Assignment and Assumption of Lease created from STAG's standard form. Jeremy Ozen replied to Hawkins by e-mail the same day, saying "Rob, please see attached we cleaned it up for the final entity." The e-mail chain and the attached assignment document reflecting Jeremy Ozen's edit are Exhibit 20 to the Dwyer Aff. (Exhibit 13 to Hawkins Depo.). The assignee on this assignment is "**SOLAR SEAL LLC**, a Delaware limited liability company…." Id. (bold in original).

47. STAG was satisfied with the information received from Jeremy Ozen and approved the assignment of the lease. Hawkins Depo. 64: 3-8. The executed Assignment and Assumption of Lease is Exhibit E to STAG's Amended Complaint.

**E. Solar Seal DE Ceases Operations and Auctions Manufacturing Equipment.**

48. In June 2022, Solar Seal DE was suffering business losses. See Letter signed by Jeremy Ozen, Exhibit 21 to Dwyer Aff. (page 1 of Exhibit 10 to Ozen Depo.) Solar Seal DE decided to wind down and liquidate assets. Id.

49. STAG understood in June 2022 that Solar Seal DE was shutting down operations. Hawkins Depo. 32: 18-21 ("Q: So you understood in June of '22 that Solar Seal was leaving the premises; correct? A. I understood that they were shutting their operations down.").

50. Hawkins understood this, first, based on Solar Seal DE's having generated a so-called WARN notice. Hawkins Depo. 32: 7-17. "WARN" is a reference to the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et. seq., which protects workers facing layoffs or plant closings.

51. In early September, Solar Seal DE sold at public auction over 100 pieces of its large manufacturing machinery. See Bates-numbered documents SSDE000057-000099, Exhibit 22 to Dwyer Aff. (including photographs of auctioned machinery) (Tab A to Defendants' Opposition to Motion to Compel and Crossclaim for Judgment on the Pleadings).

52. The website for US Glass (a trade publication) listed the date and place of auction and the goods to be auctioned as:

> …an array of Solar Seal's architectural glass product manufacturing equipment following the closure of its South Easton, Mass., facility.
>
> …
>
> "The Solar Seal auction will provide buyers a unique opportunity to purchase late model architectural glass products manufacturing equipment at a reduced cost with no delays," says Andrew Duncan, vice president of global auctions at Surplus Solutions. "All of the assets are available immediately with no supply chain issues or any delays. The 88,000-square-foot facility is also available for lease. For any buyer interested in both the equipment and taking over the lease, it is a unique turnkey opportunity and can be up in running in only a few weeks."

> Featured items at the auction will include glass tempering furnaces, high precision milling and drilling machines, insulated glass production lines, glass washers, cutting tables, straight line edges, glass storage racks, glass transport trucks and more.

See id. at SSDE000097-99 included in Exhibit 22 to Dwyer Aff.

53. On September 15, 16 and 20, 2022, Solar Seal DE's auctioneer wired the auction proceeds to Solar Seal DE's bank account. See City National Bank statement for Solar Seal DE dated September 30, 2022, Exhibit 23 to Dwyer Aff.

54. Hawkins visited the Solar Seal DE premises on two occasions before the auction and stated that, by the second time, "five to ten percent" of the machinery had been removed. Hawkins Depo. 112-13. He also visited the premises after the auction. By that point most of the machinery was gone. Id. at 110.

55. Having seen most of Solar Seal DE's employees and equipment gone from the premises, STAG took no action to secure Solar Seal DE's rent obligation. In this decision, STAG relied on: (a) its initial capitalization assessment; (b) the fact that Solar Seal DE would be in possession of auction proceeds; and (c) its belief that the business remained a going concern. Hawkins Depo. 106-07. That particular belief was based on the statement of its broker, Collier's, purportedly that Solar Seal DE's management had signed a lease in Connecticut. Id. at 107 & 115.

56. Asked how Solar Seal DE could continue in Connecticut with only five to ten percent of its equipment, Hawkins replied with his understanding that "they bought new equipment" and that "the different entity would supply the rest of the equipment to run the Connecticut business." Id. at 117-18.

57. STAG cannot identify a single customer of Solar Seal DE's that was served by the Connecticut entity. Id. at 118-38. It does not say that there is any common customer that it is unable to identify by name.

**F. O3 Industries' Lack of Ownership or Control over Solar Seal DE.**

58. Hawkins signed STAG's Answers to Solar Seal's Interrogatories. See STAG Answers to Interrogatories, Exhibit 24 to Dwyer Aff. Answer No. 2 set forth the basis of STAG's purported information and belief that O3 Industries held and controlled Solar Seal. Id. When Hawkins signed STAG's answers to Solar Seal's Interrogatories, STAG did not then know the members of O3 Industries. It did not know the members of Solar Seal DE. Hawkins Depo. 38: 5-11.

59. Hawkins testified that when he signed STAG's answers to Solar Seal's Interrogatories, STAG believed that "at least some of [Solar Seal DE's membership] units were owned by O3 Industries." Id. at 39: 24 – 40: 1.

60. Hawkins stated that STAG "thought [O3 Industries] had a controlling interest, that they were the ones in charge of the LLC." Id. at 40: 6-8. They assumed that control "was through a majority of the membership interest or through the operating agreement." Id. at 40: 12-16. STAG had never seen Solar Seal DE's operating agreement, however, id. at 42: 13, and Hawkins admitted that STAG didn't know whether O3 Industries owned a majority of Solar Seal DE's units. Id. at 42: 4-7.

61. Hawkins has "seen a lot of real estate operating agreements and what [he has] seen is that generally there's a controlling member." Id. at 44: 10-12. "That member doesn't always control the majority of the LLC. Often times the capital controls -- owns a big portion of it but the voting rights are with the managing member." Id. at 44: 14-16.

62. Jeremy Ozen is the managing member of Solar Seal DE. Ozen Depo. 62: 2-7.

63. STAG does not know whether Solar Seal DE vested voting rights with the managing member, and it has done nothing to find out. Hawkins Depo. 45: 3-5 ("Q. And you don't know whether Solar Seal, LLC vested its voting rights in the manager; correct? A. That's correct."); 44: 17-21 ("Q. … Did you ever do anything to determine whether Solar Seal vested its voting rights in the manager? A. I didn't personally.").

64. Hawkins understands from his experience that when a limited liability company executes or assumes a lease as a tenant, that limited liability company, and not its parent company is liable for the leased debt, unless the lease is structured to make the parent company a co-obligor. Hawkins Depo. 52: 7-14.

**G. Other**

65. Exhibit 25 to the Dwyer Affidavit (Exhibit 34 to Ozen Depo.) is a July 19, 2021 e-mail from Ryan Spurgeon of a company called Antamex Industries, Inc. ("Antamex").

66. Exhibit 26 to the Dwyer Affidavit (Exhibit 35 to Ozen Depo.) is a July 28, 2021 e-mail from Ryan Spurgeon.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | SOLAR SEAL LLC, SOLAR SEAL LLC, NAVERRA GLASSS LLC, and O3 INDUSTRIES LLC, |
|  | By their attorneys, |
|  | */s/ Daniel J. Dwyer*<br>Daniel J. Dwyer (BBO No. 567026)<br>Mary Petronio (BBO No. 713542)<br>Verrill Dana LLP<br>One Federal Street, 20th Floor<br>Boston, MA 02110<br>ddwyer@verrill-law.com |
| Dated: November 26, 2024 | (617) 309-2600 |

## CERTIFICATE OF SERVICE

I, Daniel J. Dwyer, certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be served by first class mail postage prepaid, to those indicated as non-registered participants on November 26, 2024.

                                                  */s/ Daniel J. Dwyer*
                                                  Daniel J. Dwyer

27077356_3